**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse 40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** 26-128 (L), 26-317, 26-318, 26-388

Caption [use short title]

**Motion for:** Change Venue (transfer Circuits)

Waterkeeper Alliance, Inc., et al.,

Petitioners,

v.

United States Environmental Protection Agency, et al.,

Respondents.

Set forth below precise, complete statement of relief sought:

Intervenor-Respondents Utility Water Act Group and America's Power move to transfer the consolidated cases to the U.S. Court of Appeals for the Eighth Circuit.

**MOVING PARTY:** See attached sheet

☐ Plaintiff ☐ Defendant

☐ Appellant/Petitioner ☐ Appellee/Respondent

**OPPOSING PARTY:** See attached sheet

**MOVING ATTORNEY:** See attached sheet

**OPPOSING ATTORNEY:** See attached sheet

[name of attorney, with firm, address, phone number and e-mail]

See attached sheet

See attached sheet

Court- Judge/ Agency appealed from: United States Environmental Protection Agency

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):

☒ Yes ☐ No (explain):

Opposing counsel's position on motion:

☐ Unopposed ☐ Opposed ☐ Don't Know

Does opposing counsel intend to file a response:

☐ Yes ☐ No ☐ Don't Know

See attached sheet

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☐ Yes ☐ No

Has this relief been previously sought in this court? ☐ Yes ☐ No

Requested return date and explanation of emergency:

N/A

Is the oral argument on motion requested? ☐ Yes ☒ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set? ☐ Yes ☒ No If yes, enter date:

**Signature of Moving Attorney:**

/s/ George P. Sibley, III **Date:** 3/13/2026 Service : ☒ Electronic ☐ Other [Attach proof of service]

**Form T-1080** (rev. 10-23)

**Motion Information Statement for**
**Docket Numbers 26-218(L), 26-317, 26-318, 26-388 (2d Cir.)**
**(continued)**

**Moving Parties:**

Utility Water Act Group, Intervenor-Respondent
America's Power, Intervenor-Respondent

**Opposing Parties:**

***Petitioners*:**

Waterkeeper Alliance, Inc.
Natural Resources Defense Council, Inc.
Prairie Rivers Network
Environmental Integrity Project
PennEnvironment, Inc.
Kentucky Resources Council
Diné Citizens Against Ruining Our Environment
Clean Water Action
Center for Biological Diversity
Appalachian Voices
South Carolina Coastal Conservation League
Sierra Club

***Respondents*:**

United States Environmental Protection Agency
Lee Zeldin, Administrator, United States Environmental Protection Agency

**Moving Attorneys:**

George P. Sibley, III
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
(804) 788-8200
gsibley@Hunton.com
*Counsel for Intervenor-Respondent Utility Water Act Group*

Andrew J. Turner
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, N.W.

Washington, DC 20037
(202) 955-1500
aturner@Hunton.com
*Counsel for Intervenor-Respondent Utility Water Act Group*

Brian R. Levey
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037
(202) 955-1500
blevey@Hunton.com
*Counsel for Intervenor-Respondent Utility Water Act Group*

Allison D. Wood
MCGUIRE WOODS LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
awood@mcguirewoods.com
*Counsel for Intervenor-Respondent America's Power*

Makram B. Jaber
MCGUIRE WOODS LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
mjaber@mcguirewoods.com
*Counsel for Intervenor-Respondent America's Power*

Andrew D. Knudsen
MCGUIRE WOODS LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
aknudsen@mcguirewoods.com
*Counsel for Intervenor-Respondent America's Power*

**Opposing Attorneys:**

Thomas J. Cmar
Earthjustice

6608 Wooster Pike
Cincinnati, OH 45227
(312) 257-9338
tcmar@earthjustice.org
*Counsel for Petitioners Waterkeeper Alliance, Inc.; Natural Resources Defense Council, Inc.; Kentucky Resources Council; Diné Citizens Against Ruining Our Environment; Clean Water Action; Sierra Club*

Abel Russ
Environmental Integrity Project
888 17th Street, N.W.
Washington, DC 20006
(802) 482-5379
aruss@environmentalintegrity.org
*Counsel for Petitioners Prairie Rivers Network, Environmental Integrity Project, PennEnvironment, Inc.*

Hannah Mary Margaret Connor
Center for Biological Diversity
1411 K Street, N.W., Suite 1300
Washington, DC 20005
(202) 681-1676
hconnor@biologicaldiversity.org
*Counsel for Petitioner Center for Biological Diversity*

Claire Tonry
Smith & Lowney, PLLC
2317 E. John Street
Seattle, WA 98112
(206) 860-2883
claire@smithandlowney.com
*Counsel for Petitioner Center for Biological Diversity*

Nicholas Steele Torrey
Southern Environmental Law Center NC
136 E. Rosemary Street, Suite 500
Chapel Hill, NC 27514
(919) 967-1450
ntorrey@selcnc.org
*Counsel for Petitioners Appalachian Voices, South Carolina Coastal*

*Conservation League*

Joshua Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5560
joshua.smith@sierraclub.org
*Counsel for Petitioner Sierra Club*

Jeffrey Hughes
United States Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
(202) 532-3080
jeffrey.hughes@usdoj.gov
*Counsel for Respondents United States Environmental Protection Agency and Lee Zeldin, Administrator, United States Environmental Protection Agency*

Matthew Kahn
United States Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
(202) 532-3080
matthew.kahn@usdoj.gov
*Counsel for Respondents United States Environmental Protection Agency and Lee Zeldin, Administrator, United States Environmental Protection Agency*

**Opposing counsel's position on motion:**

Petitioners oppose.
Respondents reserve their position.

**Does opposing counsel intend to file a response:**

Petitioners: Yes
Respondents: Don't know

# 26-128(L)

## Con. 26-317, 26-318, 26-388

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

---

WATERKEEPER ALLIANCE, INC.; NATURAL RESOURCES DEFENSE COUNCIL, INC.; PRAIRIE RIVERS NETWORK; ENVIRONMENTAL INTEGRITY PROJECT; PENNENVIRONMENT, INC.; KENTUCKY RESOURCES COUNCIL; DINÉ CITIZENS AGAINST RUINING OUR ENVIRONMENT; CLEAN WATER ACTION; CENTER FOR BIOLOGICAL DIVERSITY; APPALACHIAN VOICES; SOUTH CAROLINA COASTAL CONSERVATION LEAGUE; and SIERRA CLUB,

*Petitioners*,

(*For Continuation of Caption and Additional Counsel See Inside Cover*)

---

On Petitions for Review of a Final Rule
of the Environmental Protection Agency
90 Fed. Reg. 61,328 (Dec. 31, 2025)

---

INTERVENORS UTILITY WATER ACT GROUP AND AMERICA'S POWER'S JOINT OPPOSED MOTION FOR TRANSFER

---

Andrew J. Turner
Brian R. Levey
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037
(202) 955-1500
aturner@Hunton.com
blevey@Hunton.com

George P. Sibley, III
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
(804) 788-8200
gsibley@Hunton.com
*Counsel for Intervenor-Respondent Utility Water Act Group*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondents*,

and

UTILITY WATER ACT GROUP; AMERICA'S POWER,

*Intervenor-Respondents*.

Allison D. Wood
Makram B. Jaber
Andrew D. Knudsen
McGuireWoods LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
awood@mcguirewoods.com
mjaber@mcguirewoods.com
aknudsen@mcguirewoods.com
*Counsel for Intervenor-Respondent America's Power*

In these consolidated cases, numerous groups challenge a recent United States Environmental Protection Agency (EPA) rule—the "Extensions Rule"—that extends the deadlines and adds several flexibility provisions for achieving compliance with a May 2024 EPA effluent limitations rule governing steam electric power plants. The 2024 Rule already is under review by the U.S. Court of Appeals for the Eighth Circuit. Because any challenge to EPA's "Extensions Rule" necessarily implicates the 2024 Rule, the Eighth Circuit is the appropriate venue for these cases. The Utility Water Act Group (UWAG) and America's Power (Intervenors), both of which have challenged the 2024 Rule, move to transfer these cases to the Eighth Circuit.

First, 28 U.S.C. § 2112, which governs venue in these cases, specifies that "[a]ll courts in which proceedings are instituted with respect to the same order … *shall* transfer those proceedings to the court in which the record is so filed." *Id.* § 2112(a)(5) (emphasis added). A challenge to an extension of deadlines set by the 2024 Rule is a challenge "with respect to" the 2024 Rule. *See BASF Wyandotte Corp. v. Costle*, 582 F.2d 108, 111–12 (1st Cir. 1978).

Second, and independent of § 2112, judicial economy supports transfer. If the Eighth Circuit sets aside the 2024 Rule as unlawful (as sought by Intervenors and others), any resources this Court expends would be wasted.

For these reasons, courts have transferred cases in virtually identical circumstances. *See* Order, *Clean Water Action v. EPA*, No. 17-1216 (D.C. Cir. Feb. 1, 2018), ECF No. 1716063 (ordering transfer of similar rule postponing compliance deadlines to Fifth Circuit). This Court should do the same.

Counsel for UWAG contacted counsel for the parties and informed them of the substance of this motion. Petitioners oppose. Respondents reserve their position.

## BACKGROUND

### I. The Clean Water Act's ELG Requirements

The Clean Water Act (CWA or the "Act") prohibits the "discharge of" "pollutant[s]" from "point sources" into "waters of the United States" unless authorized. 33 U.S.C. § 1311(a), (b)(1)(A). Facilities discharging wastewater must obtain a permit setting limits on discharges of pollutants. *Id.* § 1342. Those limits can be based on the amount of a pollutant the waterbody can receive without violating water-quality standards, *id.* §§ 1312, 1342, and on use of wastewater treatment technology to limit a facility's discharge of the pollutant. *Id.* §§ 1314, 1342; *see Texas Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 927 (5th Cir. 1998). The petitions for review consolidated in this Court involve technology-based limits, also known as "effluent limitations guidelines" (ELGs).

EPA must periodically establish ELGs for "classes and categories of point sources." *See, e.g.*, 33 U.S.C. § 1314(b). This case concerns the standard for

existing steam electric point sources, *i.e.* power plants. The Act requires EPA to base ELGs on limits attainable through use of the "best available technology economically achievable" (BAT). *Id*. §§ 1311(b)(2)(A), 1314(b)(2). To qualify as BAT, a technology must be both "available" and "'economically achievable.'" *See Texas Oil*, 161 F.3d at 928.[1]

## II. D.C. Circuit Transfer of Challenges to 2017 ELG Deadline Rule

In 2015, EPA issued a final rule revising power plant ELGs governing multiple waste streams, including flue gas desulfurization wastewater (FGDW) and combustion residual leachate (CRL).[2] *See* 80 Fed. Reg. 67,838 (Nov. 3, 2015) ("2015 Rule"). Multiple petitioners filed petitions for review of the 2015 Rule, and

[1] Congress envisioned that, as technology evolved, ELGs would "result in reasonable further progress toward the national goal of eliminating the discharge of all pollutants," but EPA may only eliminate a discharge if it finds "such elimination is technologically and economically achievable for a category or class of point sources." 33 U.S.C. § 1311(b)(2)(A).

[2] FGDW or "scrubber wastewater" is produced by spraying a sorbent slurry to facilitate a reaction where sulfur dioxide is removed from exhaust gas and taken away in the slurry water. *See* 80 Fed. Reg. at 67,846. CRL is a liquid produced when coal-combustion and treatment by-products (e.g., combustion residuals or ash) interact with water, including "any suspended or dissolved constituents in the liquid, that has percolated through or drained from waste or other materials placed in a landfill, or that passes through the containment structure (*e.g.*, bottom, dikes, berms) of a surface impoundment." *See id.* at 67,847.

the Judicial Panel on Multidistrict Litigation (JPML) consolidated those petitions in the Fifth Circuit pursuant to 28 U.S.C. § 2112(a).[3]

In 2017, EPA announced it would reconsider the 2015 Rule and postponed the 2015 Rule's compliance deadlines for two of the wastestreams.[4] Several petitioners sought review of this 2017 Postponement Rule in the D.C. Circuit. UWAG moved to transfer that case to the Fifth Circuit, where related litigation concerning the 2015 Rule was pending. UWAG noted that the 2015 Rule and 2017 Postponement Rule were sequential, interrelated orders, which inextricably intertwined the issues presented in the D.C. Circuit and the Fifth Circuit. In the parlance of 28 U.S.C. § 2112, that meant both cases effectively challenged the "same order." The D.C. Circuit agreed and transferred the case to the Fifth Circuit.[5]

## III. The 2024 ELG Rule

On May 9, 2024, EPA promulgated its fifth generation of substantive revisions to the steam electric ELGs, significantly changing the limits (and

---

[3] Consolidation Order, *In re EPA, "Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category; Final Rule." 80 Fed. Reg. 67,838, Published on November 3, 2015*, MCP No. 136 (JPML Dec. 8, 2015), ECF No. 3.

[4] 82 Fed. Reg. 43,494 (Sept. 18, 2017) ("2017 Postponement Rule").

[5] Order, *Clean Water Action v. EPA*, No. 17-1216 (D.C. Cir. Feb. 1, 2018), ECF No. 1716063.

technological bases for the limits) just set by EPA in 2020.[6] Reversing the determinations it made in its 2020 Rule,[7] EPA concluded that a suite of zero-discharge treatment systems (membrane filtration and thermal or spray dryer evaporation) are technologically available and economically achievable for the steam electric industry to meet zero-discharge limits. On that technological premise, EPA set zero-discharge limits for two wastestreams: FGDW and CRL. Under the 2024 Rule, facilities must either meet these new zero-discharge limits by December 31, 2029, or cease combusting coal by December 31, 2034.

Intervenors and others filed petitions for review of the 2024 Rule in various courts of appeals.[8] The JPML consolidated those cases in the Eighth Circuit.[9]

---

[6] Supplemental Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, 89 Fed. Reg. 40,198 (May 9, 2024) ("2024 Rule").

[7] Steam Electric Reconsideration Rule, 85 Fed. Reg. 64,650 (Oct. 13, 2020) ("2020 Rule").

[8] *Sw. Elec. Power Co. & UWAG v. EPA*, No. 24-2123 (8th Cir. filed May 30, 2024) ("*SWEPCO*"); *West Virginia et al. v. EPA*, No. 24-11702 (11th Cir. filed May 28, 2024); *Catawba Riverkeeper et al. v. EPA*, No. 24-1483 (4th Cir. filed May 28, 2024); *NRG Texas Power, LLC & UWAG v. EPA*, No. 24-60268 (5th Cir. filed May 30, 2024); *Ctr. for Biological Diversity v. EPA*, No. 24-3294 (9th Cir. filed May 23, 2024); *Clean Water Action et al. v. Zeldin*, No. 24-1167 (D.C. Cir. filed May 30, 2024).

[9] Consolidation Order, *In re EPA, Supplemental Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, 89 Fed. Reg. 40198, Published on May 9, 2024*, MCP No. 187 (JPML June 14, 2024), ECF No. 4. The following petitions for review were filed after the June 14, 2024 JPML Consolidation Order and were consolidated with *SWEPCO*, No. 24-2123(L) (8th Cir.): *City Utils. of Springfield, Missouri v. EPA*, No. 24-2215

Intervenors and aligned petitioners argued in their opening brief in the Eighth Circuit that the technology on which EPA based the new zero-discharge limits is neither "available" nor "economically achievable." Specifically, EPA must ground BAT limits on "available" technologies, which means those "'present or ready for immediate use'" to meet new discharge limits (not just technology that theoretically may be ready for such use in the future). *See* Opening Br. of Util. & State Pet'rs at 26–27, *SWEPCO*, No. 24-2123 (8th Cir. Nov. 7, 2024) ("Opening Br."), ECF No. 5455480. EPA concluded that so-called "zero-discharge technologies" (membranes, thermal evaporators, and spray dryers) are "available" to treat FGDW and CRL waste streams to a zero-discharge level at power plants. But membranes have never been proven operational at the scale needed to reliably treat baseload powerplant FGDW and CRL to a zero-discharge limit. UWAG and other commenters identified numerous reasons, documented in EPA's administrative record, why none of these technologies (alone or in combination) could be reliably adapted to achieve zero-discharge levels at most regulated facilities. Ignoring these concerns, EPA simply assumed that limited uses of these technologies in pilot studies and sparsely documented uses at foreign facilities sufficed to show the technology is available

(8th Cir. filed June 13, 2024, consolidated with *SWEPCO* July 9, 2024); *America's Power v. EPA*, No. 24-2494 (8th Cir. filed July 19, 2024, consolidated with *SWEPCO* July 22, 2024); *City of Springfield, Office of Pub. Utils., d/b/a City, Water, Light & Power v. EPA*, No. 24-2626 (7th Cir. filed Sept. 18, 2024, transferred and consolidated with *SWEPCO* Oct. 1, 2024) [No. 24-3009 (8th Cir.)].

and can be used at operational scale by steam electric powerplants. *See id.* at 28–39.[10]

Intervenors also challenged EPA's method for assessing the "economic achievability" of treatment technologies in the 2024 Rule. Comments on the proposed version of the 2024 Rule demonstrated through real-time cost information that the design and use of EPA's cost model, which EPA had *just* used to estimate costs to install systems required by the 2020 Rule, significantly underestimated costs imposed by the 2020 Rule. But rather than correct its model to address these documented errors, EPA persisted in using the same flawed model in the 2024 Rule, making its evaluation of the statutory "economic achievability" criteria arbitrary and capricious. *See id.* at 39–45.

Environmental Petitioners, on the other hand, support the zero-discharge limits and other aspects of the 2024 Rule, but asked the Eighth Circuit to vacate the provision of the 2024 Rule that allows facilities to continue operating until 2034 under 2020 Rule limits and to vacate the "unmanaged CRL" subcategory of the 2024 Rule. They argued, among other things, that these provisions are inconsistent with EPA's finding that zero-discharge technologies are available and economically

[10] Concerns were also raised in the opening brief regarding the technical and economic feasibility of achieving zero-discharge limits set for bottom ash transport water from affected facilities that use wet ash handling systems. Opening Br. at 55–58.

achievable. *See*, *e.g.*, Env't Pet'rs' Opening Br. at 25–31, *Clean Water Action v. Zeldin*, No. 24-2246 (8th Cir. Nov. 7, 2024), ECF No. 5456404.

After the parties filed their opening briefs (November 7, 2024) and EPA filed its response brief (January 17, 2025), EPA requested that the case be placed in abeyance while it reconsidered the 2024 Rule. The Eighth Circuit granted EPA's request. Order, *SWEPCO*, No. 24-2123 (8th Cir. Feb. 28, 2025), ECF No. 5491197; Order, *Clean Water Action v. Zeldin*, No. 24-2246 (8th Cir. Feb. 28, 2025), ECF No. 5491197.

## IV. The ELG Deadline Extensions Rule

On February 21, 2025, UWAG petitioned EPA to reconsider and repeal the 2024 Rule on the same bases that UWAG challenged the Rule in the Eighth Circuit.[11] Specifically, UWAG submitted evidence demonstrating EPA's errors with respect to the availability and economic achievability of zero-discharge technology, and further demonstrating that in fact zero-discharge technology is not available or economically achievable to reliably meet the 2024 Rule's zero-discharge limits applicable to FGDW and CRL at covered steam electric power plants (virtually all of which are baseload plants that produce large volume waste streams). UWAG

[11] UWAG, *Petition for Rulemaking to Reconsider and Administratively Stay the Supplemental Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category; Final Rule, 89 Fed. Reg. 40,198 (May 9, 2024)* (Feb. 21, 2025), EPA-HQ-OW-2009-0819-10613, https://www.regulations.gov/document/EPA-HQ-OW-2009-0819-10613.

urged EPA to postpone compliance dates in the 2024 Rule during its reconsideration of the 2024 Rule, just as it did in 2017. *Id*. at 1, 39–40.

EPA, in response to multiple factors, including those identified in UWAG's petition for reconsideration, proposed to extend compliance deadlines and provide other mechanisms to comply with the 2024 Rule.[12]

Many of the Petitioners in this case, including Waterkeeper Alliance, Inc., Natural Resources Defense Council, Clean Water Action, Kentucky Resources Council, Environmental Integrity Project, Prairie Rivers Network, Clean Water Action, Sierra Club, and Center for Biological Diversity, submitted joint comments on November 3, 2025 opposing EPA's proposal.[13] They generally defended EPA's 2024 BAT determination and argued that EPA failed to identify new information calling that determination into question. According to the Petitioners, the administrative record underlying the 2024 Rule—which EPA filed with the Eighth Circuit on July 9, 2024—shows that zero-discharge technologies are each available based on domestic and foreign installations, domestic and international pilot tests, and use on other wastestreams in the steam electric and other industries. *See id.* at

[12] 90 Fed. Reg. 47,693, 47,698 (Oct. 2, 2025).

[13] Earthjustice et al., *Comments on Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category—Deadline Extensions, 90 Fed. Reg. 47,693 (Oct. 2, 2025)* (Nov. 3, 2025), EPA-HQ-OW-2009-0819-10750, https://www.regulations.gov/comment/EPA-HQ-OW-2009-0819-10750 ("Pet'rs' Comments").

30. Petitioners also assert that "EPA adequately considered the costs incurred by industry to comply with the 2020 and 2024 Rules when establishing BAT and provided a reasoned explanation for selecting zero-discharge technologies." *Id*. at 31.

EPA's final Extensions Rule, published on December 31, 2025, closely aligns with its proposal. It extends the zero-discharge compliance deadline for FGDW and CRL from December 31, 2029 to December 31, 2034, and provides other mechanisms for compliance, based on increased electricity demand (especially from sectors like data centers and manufacturing), grid reliability concerns resulting from premature retirements of baseload power plants, and supply chain disruptions that affect the ability to install required wastewater treatment technologies. *See* 90 Fed. Reg. 61,328, 61,334–39 (Dec. 31, 2025). EPA's responses to public comments indicate that EPA intends to consider the issues raised regarding the 2024 BAT determination and may evaluate alternative technology options as part of that subsequent action.[14]

[14] EPA, Response to Public Comments for Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category—Deadline Extensions at 507 (Dec. 2025), EPA-HQ-OW-2009-0819-13722, https://www.regulations.gov/document/EPA-HQ-OW-2009-0819-13722.

Petitioners filed challenges to the Extensions Rule in the Second, Fourth, and Ninth Circuits, which the JPML consolidated in this Court on February 10, 2026.[15]

## V. Current Status of Proceedings in the Eighth Circuit

On January 30, 2026, after EPA issued the Extensions Rule, EPA moved the Eighth Circuit to continue to hold the litigation in abeyance pending further rulemaking on "unmanaged CRL."[16] Intervenors, along with the State Petitioners and City Utilities of Springfield, agreed to the abeyance, but only until a determination is made as to which U.S. Circuit Court of Appeals will hear challenges to the 2025 Extensions Rule "including resolution of any potential motions for transfer pursuant to Rule 27 of the Federal Rules of Appellate Procedure." EPA 8th Cir. Abeyance Mot. § 12. City Water, Light and Power, another party in the Eighth Circuit litigation, did "not support the proposed further abeyance" because further EPA rulemaking on unmanaged CRL "will be unrelated to the issues raised by CWLP's suit." *Id.* The Eighth Circuit granted EPA's abeyance motion on February

---

[15] Consolidation Order, *In re EPA, Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, Deadline Extensions, 90 Fed. Reg. 61328, Published on December 31, 2025*, MCP No. 199 (JPML Feb. 10, 2026), ECF No. 2. The Sierra Club filed a tagalong challenge in the Ninth Circuit on February 6, 2026. On February 18, 2026, the Ninth Circuit ordered the case transferred to the Second Circuit. Order, *Sierra Club v. EPA*, No. 26-752 (9th Cir. Feb. 18, 2026), ECF No. 9.1.

[16] EPA's Motion to Hold Case in Abeyance, *SWEPCO*, No. 24-2123 (8th Cir. Jan. 30, 2026), ECF No. 5602851 ("EPA 8th Cir. Abeyance Mot.").

19, 2026, and required EPA to file a motion to govern further proceedings once EPA completes its unmanaged CRL rulemaking.[17]

## STATUTORY FRAMEWORK

Section 509(b)(1) of the Clean Water Act vests federal courts of appeals with original and exclusive jurisdiction to review certain categories of EPA actions. 33 U.S.C. § 1369(b)(1); *see also Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 608 (2013). Among those EPA actions are rules "approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of [the Clean Water Act]," "promulgating any standard of performance under section 1316," and "promulgating any … pretreatment standard under section 1317." 33 U.S.C. § 1369(b)(1)(A), (C), (E).

When multiple petitions for review of an agency action are filed in different circuits, 28 U.S.C. § 2112(a) mandates that those petitions be consolidated in a single court. If an agency receives petitions for review in more than one court of appeals within ten days of issuing an order, the JPML randomly designates one of those courts as the court in which the agency must file the record. *Id.* § 2112(a)(1), (3). "All courts in which proceedings are instituted with respect to the same order … shall transfer those proceedings to the court in which the record is so filed." *Id.*

[17] Revised Order, *SWEPCO*, No. 24-2123 (8th Cir. Feb. 19, 2026), ECF No. 5609611.

§ 2112(a)(5). The statute further provides that: "[f]or the convenience of the parties in the interest of justice, the court in which the record is filed may thereafter transfer all the proceedings with respect to that order to any other court of appeals." *Id.*; *see also ITT World Commc'ns, Inc. v. FCC*, 621 F.2d 1201, 1208 (2d Cir. 1980) ("The statutory criteria for determining a motion to transfer are the convenience of the parties and the interest of justice.").

## ARGUMENT

### I. The Court should transfer this case to the Eighth Circuit under 28 U.S.C. § 2112(a)(5).

Because the Extensions Rule revises the ELG deadlines EPA promulgated in 2024, it is considered the "same order" as the 2024 Rule under 28 U.S.C. § 2112(a)(5). *See BASF Wyandotte*, 582 F.2d at 112 ("[S]equential regulations should be considered the same order if they arise from the 'same or interrelated proceedings' and … this interpretation of the statute should be strictly applied."); S. REP. NO. 100-263 at 5 (1987), *reprinted in* 1987 U.S.C.C.A.N. 3198, 3202 ("[S]equential or closely related orders issued in the course of the same or interrelated administrative proceedings [will be] treated as 'the same order' and reviewed by the circuit court reviewing the initial order." (citing *BASF*, 582 F.2d at 112)).

So, under the process Congress mandated in § 2112, the Eighth Circuit is the sole venue for challenges to the 2024 Rule and the Extensions Rule.

Congress enacted the current version of 28 U.S.C. § 2112 in 1988. Pub. L. No. 100-236, 101 Stat. 1731 (1988). That legislation ended the "race to the courthouse" model of judicial review, whereby litigants would rush to file the first petition for review of an agency order in their preferred court, thereby gaining a perceived litigation advantage. Congress replaced the old model with a lottery system requiring the random selection of a single court of appeals to review all petitions concerning the same agency order. To ensure that EPA actions falling within CWA § 509(b)(1)'s jurisdictional scope (such as ELGs) would be subject to the new lottery system, Congress simultaneously amended the CWA and repealed that Act's inconsistent lottery system. *Id.* § 2, 101 Stat. 1732 (amending § 509(b), 33 U.S.C. § 1369(b)). *See also* S. REP. NO. 100-263 at 5 (1987), *reprinted in* 1987 U.S.C.C.A.N. 3198, 3202 ("Thus … multiple challenges to agency orders issued under the Clean Water Act, as amended, will be covered by this bill's provisions….").

As noted in the Senate Report explaining the statute, the new lottery system contemplates that "sequential or closely related orders issued in the course of the same or interrelated administrative proceedings [will be] treated as 'the same order' and reviewed by the circuit court reviewing the initial order." *Id.* (citing *BASF*, 582 F.2d at 112 (1st Cir. 1978)); *cf. Va. Elec. & Power Co. v. EPA*, 655 F.2d 534, 539 (4th Cir. 1981) (Phillips, J., concurring) (stating, prior to amendment of § 2112,

"*BASF Wyandotte Corp.* is well reasoned, and presents the most practical approach for courts confronted with sequential agency orders"). "[T]he public policy underlying section 2112(a) requires that it 'be liberally applied to permit review by a single court of closely related matters where appropriate for sound judicial administration.'" *ACLU v. FCC*, 486 F.2d 411, 414 (D.C. Cir. 1973) (quoting *E. Air Lines, Inc. v. Civil Aeronautics Bd.*, 354 F.2d 507, 511 (D.C. Cir. 1965)).

Transfer is thus appropriate "'where the same or inter-related proceeding was previously under review in a court of appeals, and is now brought for review … in a follow-on phase, where continuance of the same appellate tribunal is necessary to maintain continuity in the total proceeding.'" Order at 1, *Clean Water Action v. EPA*, No. 17-1216 (D.C. Cir. Feb. 1, 2018), ECF No. 1716063 (ordering transfer of 2017 Postponement Rule under § 2112(a)) (quoting *Pub. Serv. Comm'n v. Fed. Power Comm'n*, 472 F.2d 1270, 1272 (D.C. Cir. 1972) (per curiam)); *see also GTE South, Inc. v. Morrison*, 199 F.3d 733, 743 (4th Cir. 1999) (declining to review regulations in collateral challenge involving them, where Eighth Circuit had exclusive jurisdiction under § 2112(a)(5)); *ACLU*, 486 F.2d at 414 (§ 2112(a) should be interpreted "in a manner to embrace the situation").

The First Circuit's decision in *BASF Wyandotte*, which Congress specifically called out when it enacted the current version of § 2112, is instructive here. There, the First Circuit considered whether it was "mandated as the forum to conduct the

review of [EPA's] final regulations setting effluent limitation guidelines," based on the consolidation of petitions for review of interim final ELGs before that court nearly two years prior. 582 F.2d at 109–10. These subsequent, final ELGs "amended the 1976 interim regulations, and were effective immediately." *Id.* at 110 (citing 43 Fed. Reg. 17,776 (Apr. 25, 1978) (notice of final ELGs)). Among other things, the final ELGs changed "the quantities of permissible discharge" of pollutants, relative to those allowed under the interim final rules. *Id.*

The First Circuit considered all of this and adopted the D.C. Circuit's approach to § 2112: "sequential regulations should be considered the same order if they arise from the 'same or interrelated proceedings' and … this interpretation of the statute should be *strictly* applied." *Id.* at 112 (quoting *Pub. Serv. Comm'n*, 472 F.2d at 1272 (collecting cases)) (emphasis added). The First Circuit had no trouble finding that the final 1978 regulations, amending existing ELGs, "arose from the same administrative proceeding" as the final 1976 regulations they amended. *Id.*; *see also Va. Elec. & Power Co.*, 655 F.2d at 538–39 (Phillips, J., concurring) (endorsing *BASF Wyandotte* over a "content-based test," which "would require considerably more knowledge of the often complicated substantive content of the orders than would a rule requiring no more than an evaluation of the background proceedings out of which the regulations arose" (internal quotation marks omitted)).

Under these settled principles, the Extensions Rule plainly arises from the same administrative proceedings as the 2024 Rule. The Extensions Rule revises the very compliance deadlines and procedures for the FGDW and CRL limitations at issue in the Eighth Circuit, so it is integrally related to the 2024 Rule.[18] The 2024 Rule is being litigated exclusively in the Eighth Circuit, where the full record has been on file since July 2024. So, the Extensions Rule must be transferred there. 28 U.S.C. § 2112(a)(5) ("*All* courts in which proceedings are instituted with respect to the same order … shall transfer those proceedings to the court in which the record is so filed." (emphasis added)). *See also* Order, *Cooling Water Intake Structure Coal. v. EPA*, No. 14-1931 (4th Cir. Dec. 17, 2014), ECF No. 64.

Moreover, the Extensions Rule undoubtedly is based on the same administrative record as the 2024 Rule, expanded only modestly to include new information relating to the achievability of the original deadlines. The records for each rule reside in the same rulemaking docket at EPA, and the Extensions Rule modifies the 2024 Rule's provisions under the Clean Water Act. The interrelation between the 2024 Rule and Extensions Rule is crystal clear. *See BASF Wyandotte*, 582 F.2d at 112; *see also Bell Atl. Tel. Cos. v. FCC*, No. 96-1333, 1996 WL 734326,

[18] Under nearly identical circumstances, the D.C. Circuit found the 2017 ELG Postponement Rule was subject to § 2112(a) and therefore transferred a petition to review that rule to the Fifth Circuit. Order, *Clean Water Action v. EPA*, No. 17-1216 (D.C. Cir. Feb. 1, 2018), ECF No. 1716063 (citing *Pub. Serv. Comm'n*, 472 F.2d at 1270 and *E. Air Lines*, 354 F.2d at 511).

at *1 (D.C. Cir. Nov. 25, 1996) (per curiam) (ordering petitions for review transferred to Eighth Circuit, where they were "associated with the same dockets, arise out of the same administrative proceeding, and govern aspects of a single agency undertaking to implement the provisions in the Telecommunications Act of 1996 … [and] must be treated as the 'same order' pursuant to 28 U.S.C. § 2112(a)").

On top of all of that, EPA noted substantial questions about the record for the 2024 Rule when it decided to amend the compliance deadlines. *See, e.g.*, 90 Fed. Reg. at 61,341 ("EPA finds that postponing the 'no later than' dates [in the 2024 Rule] is warranted for several reasons…. First, the December 31, 2029, date for meeting the limitations no longer is 'available' for all facilities under the current circumstances due to constraints in the ability to procure and install the control technologies or their component parts, including as a result of supply-chain disruptions, as well as competition for skilled labor."), 61,343 ("While the EPA acknowledges that parts of the 2024 rule record appear to support the 2024 rule's original timeframes, the Agency disagrees that the compliance deadline extensions are not warranted. The information pointed out by [] commenters must be considered along with other record evidence, particularly newer information, showing longer timeframes are needed."). The Extensions Rule plainly arises out of the same administrative proceeding and record as the 2024 Rule.

Indeed, the new economic analysis EPA produced in support of the Extensions Rule refers to and relies on information and analysis in the record supporting the 2024 Rule. *See, e.g.*, Overview of Costs and Benefits of Steam Electric ELG 2025 Deadline Extensions Final Rule at 1 (Dec. 17, 2025), EPA-HQ-OW-2009-0819-13726, https://www.regulations.gov/document/EPA-HQ-OW-2009-0819-13726 ("To estimate the incremental costs and benefits of this final rule, the EPA relied on existing estimates of costs and benefits developed as part of the 2024 Rule analysis documented in the *Benefit and Cost Analysis for the 2024 Supplemental Steam Electric Final Rule*.").

Thus, the 2024 Rule and Extensions Rule constitute the "same order" for purposes of 28 U.S.C. § 2112. All challenges to the Extensions Rule, therefore, must be consolidated with the Eighth Circuit's review of the 2024 Rule.

## II. The Court should transfer this case to the Eighth Circuit in the interests of justice and judicial economy.

This Court also has the inherent authority and discretion to transfer the petitions to the Eighth Circuit in the interests of justice and judicial economy. *Am. Tel. & Tel. Co. v. FCC*, 519 F.2d 322, 325 (2d Cir. 1975) ("[W]e have the inherent power to order [transfer] in the interest of justice and sound judicial administration."); *see also ITT World Commc'ns, Inc.*, 621 F.2d at 1208 ("The statutory criteria for determining a motion to transfer are the convenience of the parties and the interest of justice."). This inherent authority is available even without

engaging § 2112(a). *See Mun. Distrib. Grp. v. Fed. Power Comm'n*, 459 F.2d 1367, 1368 (D.C. Cir. 1972) (per curiam).

Transfer here would achieve obvious economies. Petitioners have signaled they will raise arguments related to those presented in the Eighth Circuit. Specifically, in their comments on the Extensions Rule, Petitioners argued that "EPA's claim that the compliance deadlines should be extended an additional five years because the current deadlines 'may not be achievable *for all facilities* …' is insufficient and does not comport with the well-established meaning of 'available.'" Pet'rs' Comments at 29. In other words, one of the key elements of Petitioners' comments on the Extensions Rule focused on the adequacy of EPA's 2024 BAT determination. But that very question is already at issue in the Eighth Circuit, which is the proper forum to resolve questions concerning the applicable BAT standard and the overall lawfulness of the underlying 2024 Rule. Transfer will avoid the possibility of having different courts rule on the same or similar issues in challenges to interrelated agency actions pending at the same time. It would waste judicial resources for this Court to render a decision on deadlines governing the 2024 Rule if that rule is set aside by the Eighth Circuit (as sought by UWAG and other petitioners).

Under such circumstances, justice, judicial economy, and the interest of unified judicial review of related agency actions call "strongly for handling by the

same reviewing tribunal." *Am. Pub. Gas Ass'n v. Fed. Power Comm'n*, 555 F.2d 852, 857 (D.C. Cir. 1976) (per curiam) (citing *Pub. Serv. Comm'n*, 472 F.2d at 1272). Indeed, even the plain language of § 2112 encourages the court selected by the JPML to exclusively review an agency record and order to transfer the case before it, if need be, in the "interest of justice." 28 U.S.C. § 2112(a)(5).

Convenience to the parties also favors the Eighth Circuit. Many of the Petitioners are already integrally involved with the Eighth Circuit litigation over the 2024 Rule. Petitioners Center for Biological Diversity, Sierra Club, Waterkeeper Alliance, Inc., Natural Resources Defense Council, Inc., Clean Water Action, Diné Citizens Against Ruining Our Environment, PennEnvironment, Inc., Prairie Rivers Network, and the Environmental Integrity Project are petitioners in the Eighth Circuit action. Furthermore, the administrative record in this action challenging the Extensions Rule will substantially overlap with the administrative record filed in the Eighth Circuit action challenging the 2024 Rule.

Finally, although the Eighth Circuit proceedings are currently in abeyance, Intervenors, the states, and several other utility petitioners only supported that abeyance until a decision is made on this motion to transfer (one of the utility petitioners did not support abeyance at all). Moreover, the Eighth Circuit's abeyance order does not apply to these consolidated cases. It is safe to presume that, once these consolidated cases are transferred, the Eighth Circuit will consider the parties'

positions and set an appropriate scheduling order based on all of the cases before that court.

## CONCLUSION

Section 2112(a)(5) requires this Court to transfer these cases to the Eighth Circuit because any review of the Extensions Rule implicates review of the record and basis for the 2024 Rule, which the Eighth Circuit already has undertaken. Transfer also would achieve clear and obvious judicial economies and will be more convenient for the parties.

Dated: March 13, 2026

Respectfully submitted,

/s/ George P. Sibley, III
George P. Sibley, III
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
(804) 788-8200
gsibley@Hunton.com

Andrew J. Turner
Brian R. Levey
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037
(202) 955-1500
aturner@Hunton.com
blevey@Hunton.com

*Counsel for Intervenor-Respondent*
*Utility Water Act Group*

/s/ Allison D. Wood
Allison D. Wood
Makram B. Jaber
Andrew D. Knudsen
McGuireWoods LLP
888 16th Street, N.W., Suite 500
Washington, D.C. 20006
(202) 857-1700
awood@mcguirewoods.com
mjaber@mcguirewoods.com
aknudsen@mcguirewoods.com

*Counsel for Intervenor-Respondent America's Power*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 27(d) and 32(g)(1), I hereby certify that the foregoing document contains 5,176 words, as counted by a word processing system that includes headings, footnotes, quotations, and citations in the count, and therefore is within the word limit set by the Court. I also certify that this document complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word for Office 365 with 14-point Times New Roman font.

/s/ George P. Sibley, III
George P. Sibley, III

*Counsel for Intervenor-Respondent Utility Water Act Group*

## CERTIFICATE OF SERVICE

I certify that on March 13, 2026, I electronically filed and caused the foregoing Joint Opposed Motion for Transfer to be served on all registered CM/ECF users.

/s/ George P. Sibley, III
George P. Sibley, III

*Counsel for Intervenor-Respondent Utility Water Act Group*