# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| WATERKEEPER ALLIANCE, INC., et al., | ) ) ) | |
| Petitioners, | ) ) | No. 26-128 (lead) |
| | ) | No. 26-317 (consolidated) |
| v. | ) | No. 26-318 (consolidated) |
| | ) | No. 26-388 (consolidated) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | ) ) ) | |
| Respondents. | ) ) ) | |

## PETITIONERS WATERKEEPER ALLIANCE, ET AL., APPALACHIAN VOICES, ET AL., AND SIERRA CLUB'S RESPONSE TO INTERVENORS' <u>MOTION TO TRANSFER</u>

Petitioners in Case No. 26-128 (Waterkeeper Alliance, Inc., et al.), No. 26-318 (Appalachian Voices, et al.), and No. 26-388 (Sierra Club) respectfully oppose the motion of Utility Water Act Group ("UWAG") and America's Power (collectively, "Intervenors") to transfer these consolidated cases to the U.S. Court of Appeals for the Eighth Circuit.

Intervenors provide no valid basis for transfer. First, as voluntary entrants into this proceeding, Intervenors may not challenge venue where Respondents U.S. Environmental Protection Agency ("EPA") and Lee Zeldin have not done so.

Second, these cases challenge a distinct 2025 rule and do not require the Court to review the "same order" as prior litigation, making transfer inappropriate. The 2025 rule introduces new substantive provisions, is the product of a distinct notice-and-comment rulemaking, and is based on a new administrative record addressing different issues than prior rules. Under 28 U.S.C. § 2112(a), each time an agency issues a distinct new rule and challenges are filed in different Circuits, a lottery must determine venue. Granting Intervenors' motion would improperly circumvent this process and direct these cases to Intervenors' preferred venue, rewarding gamesmanship that Congress intended to prevent.

Finally, neither convenience of the parties nor the interest of justice favor transfer to the Eighth Circuit. The majority of Petitioners chose to file in this Circuit, and there is a strong presumption in favor of their chosen forum. Sending these cases to a different forum where cases involving a different rule and different issues are being held in abeyance would likely cause significant delay, and there is no judicial economy benefit from a transfer. If transfer is appropriate anywhere, it should be to the Fourth Circuit, which is hearing cases brought by many of the same Petitioners challenging 2020 regulations that will remain in place for longer as a result of the 2025 rule challenged here.

Intervenors' motion must be denied.

## BACKGROUND

EPA promulgates wastewater pollution limits through effluent limitation guidelines ("ELGs") for polluting industries under the federal Clean Water Act, which sets a national goal of eliminating pollution discharged into our nation's waterways. 33 U.S.C. § 1251(a)(1). To achieve that goal, EPA must establish increasingly stringent limits designed to spur industries to adopt new technologies for reducing, and ultimately eliminating, water pollution, and it must regularly review and revise those limits. *Id.* § 1311.

These consolidated cases involve EPA's most recent rulemaking to revise ELGs for steam electric power plants. For decades, power plants have been by far the largest industrial source of toxic pollutants such as arsenic, mercury, and selenium in U.S. waterways. *See, e.g.*, *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1007 (5th Cir. 2019). EPA has issued multiple rules in recent years to revise power plant ELGs to address this massive source of water pollution. In addition to this Court, litigation concerning prior power plant ELG rules is currently pending in the Fifth, Fourth, and Eighth Circuits.

EPA's first update in recent years to the power plant ELGs was finalized in 2015. Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, 80 Fed. Reg. 67838 (Nov. 3, 2015) (the "2015 Rule"). The 2015 Rule established first-ever limits on toxic pollutants in power

3

plant wastewater based on the stringent Best Available Technology Economically Achievable ("BAT") standard. *See* 33 U.S.C. § 1311(b)(2)(A).

Litigation challenging the 2015 Rule was filed by several Petitioners in this proceeding, as well as UWAG and other industry groups, in several different Courts of Appeals and was consolidated in the Fifth Circuit pursuant to 28 U.S.C. § 2112(a). *See* Consolidation Order, *In re: EPA, Effluent Limitation Guidelines*, MCP No. 136, ECF Doc. 3 (J.P.M.L. Dec. 8, 2015).

In 2017, the Fifth Circuit granted EPA's motion to sever and hold in abeyance UWAG's and other industry petitioners' challenges to the 2015 Rule pending EPA reconsideration of the rule. Order, *Sw. Elec. Power Co. v. EPA*, Case No. 15-60821, ECF Doc. 00514126308 (5th Cir. Aug. 22, 2017). The Court subsequently ruled in favor of environmental petitioners' challenges to certain provisions of the 2015 Rule and vacated and remanded those provisions. *Sw. Elec. Power Co.*, 920 F.3d at 1033.

While the Fifth Circuit litigation was pending, EPA finalized a rule postponing the beginning of the 2015 Rule's compliance period by two years. Postponement of Certain Compliance Dates for the Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, 82

4

Fed. Reg. 43494 (Sept. 18, 2017). D.C. Circuit litigation challenging that rulemaking was transferred to and resolved by the Fifth Circuit.[1]

EPA's reconsideration of the 2015 Rule ultimately led to a new final rule in 2020. Steam Electric Reconsideration Rule, 85 Fed. Reg. 64650 (Oct. 13, 2020) (the "2020 Rule"). Based on concerns that the 2020 Rule significantly weakened BAT requirements, some of the same Petitioners in this proceeding filed petitions for review in the Fourth and D.C. Circuits, and those cases were consolidated in the Fourth Circuit pursuant to 28 U.S.C. § 2112(a). Consolidation Order, *In re: EPA*, *Effluent Limitations Guidelines*, MCP No. 161, ECF Doc. 5 (J.P.M.L. Nov. 19, 2020). The cases were later held in abeyance pending further EPA rulemaking to respond to the issues raised by Petitioners there. Order, *Appalachian Voices v. EPA*, Case No. 20-2187, ECF Doc. 83 (4th Cir. Apr. 8, 2022).

EPA finalized that further rulemaking in 2024. Supplemental Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category, 89 Fed. Reg. 40198 (May 9, 2024) (the "2024 Rule"). The 2024 Rule strengthened power plant ELGs, finding that zero-discharge technologies are available and economically achievable. *Id.* at 40215, 40221,

---

[1] *See* Order, *Clean Water Action v. Pruitt*, Case No. 17-1216, ECF Doc. 1716063 (D.C. Cir. Feb. 1, 2018); *Clean Water Action v. EPA*, 936 F.3d 308 (5th Cir. 2019).

40225. Some of the same Petitioners in this proceeding, along with UWAG and other industry groups, challenged the 2024 Rule in several different Courts of Appeals, and those cases were consolidated in the Eighth Circuit pursuant to 28 U.S.C. § 2112(a). *See* Consolidation Order, *In re: EPA, Effluent Limitation Guidelines*, MCP No. 187, ECF Doc. 4 (J.P.M.L. June 14, 2024). While briefing was still underway, and following a change in Presidential administrations, EPA requested that those cases be placed in abeyance, which the court granted. Order, *Sw. Elec. Power Co. v. EPA*, Case No. 24-2123, ECF Doc. 5491197 (8th Cir. Feb. 28, 2025). The cases remain in abeyance pending further EPA rulemaking. Order, *Sw. Elec. Power Co. v. EPA*, Case No. 24-2123, ECF Doc. 5609611 (8th Cir. Feb. 19, 2026).

While this Eighth Circuit litigation was ongoing, EPA proposed and finalized a separate rulemaking in 2025. Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category— Deadline Extensions, 90 Fed. Reg. 61328 (Dec. 31, 2025) (the "2025 Rule"). EPA asserted that it promulgated the 2025 Rule based on "new information and data [that it claims] demonstrat[es] the existence of an energy crisis" that it had not previously considered. *Id.* at 61335. The 2025 Rule creates new provisions that allow plants to request site-specific "alternative applicability dates" to indefinitely extend ELG compliance deadlines under either the 2020 or the 2024 Rules. *Id.* at

61347–49, 61353–55. The rule also amends pretreatment standards for indirect dischargers to establish new "tiered" standards that would allow them to avoid three-year compliance deadlines if they seek approval to begin discharging pollutants directly to waterways. *Id.* at 61346–47, 61353. The rule also extends the 2024 Rule's compliance deadlines by five years, meaning that the 2020 Rule's pollution limits would remain in place during that extended time period. *Id.* at 61329–30. While creating these new provisions and extending deadlines, the 2025 Rule does not reconsider the 2024 Rule's substantive BAT determinations.

Petitioners challenged the 2025 Rule in three Courts of Appeals, and these cases were consolidated in this Court pursuant to 28 U.S.C. § 2112(a). *See* Consolidation Order, *In re: EPA, Effluent Limitation Guidelines*, MCP No. 199, ECF Doc. 2 (J.P.M.L. Feb. 10, 2026). On March 13, 2026, Intervenors moved to transfer these cases to the Eighth Circuit. ECF No. 41.1.

## ARGUMENT

### I. Intervenors Are Barred from Questioning Venue Here.

As a threshold matter, Intervenors' motion must fail because they may not question whether this Court is an appropriate venue when EPA has not done so. *See Cent. Tr. Co. v. McGeorge*, 151 U.S. 129, 135 (1894) ("It is scarcely necessary to say that, as the defendant company had submitted itself to the jurisdiction of the court, such voluntary action could not be overruled at the instance of

[intervenors]."); *Trans World Airlines, Inc. v. Civ. Aeronautics Bd.*, 339 F.2d 56, 63–64 (2d Cir. 1964), *cert. denied*, 382 U.S. 842 (1965) ("Venue is a privilege personal to a defendant in a civil suit and a person intervening on either side of the controversy may not object to improper venue."); *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, 287 F. Supp. 3d 651, 661 (E.D. Tex. 2018) (collecting cases and holding that "intervenors cannot now question the propriety or convenience of a venue they chose to enter"); *see also* 7C Wright & Miller's Federal Practice & Procedure § 1918 (3d ed. Sept. 2025 update) ("The intervenor cannot question venue. By voluntarily entering the action the intervenor has waived the privilege not to be required to engage in litigation in that forum.").

Venue in this Court has been properly established under 28 U.S.C. § 2112(a). After EPA filed a notice with the Judicial Panel on Multidistrict Litigation (the "Panel"), this Court was randomly selected for consolidation of all petitions for review of the 2025 Rule. Consolidation Order, *In re: EPA, Effluent Limitations Guidelines*, MCP No. 199, ECF Doc. 2 (J.P.M.L. Feb. 10, 2026). EPA has not objected to venue here, does not join Intervenors' motion to transfer (*see* ECF No. 41.1), and has filed the 2025 Rule's administrative record index in this Court (*see* ECF Nos. 44.1, 44.2, 44.3).

Intervenors' status as voluntary entrants into this forum precludes them from seeking to "override" EPA's acceptance of this Court as an appropriate venue in

8

these cases and transfer them to a different venue. *Cent. Tr. Co.*, 151 U.S. at 135. The rule against intervenors protesting venue applies equally to intervenors claiming improper venue and those requesting transfer for convenience or in the interests of justice. *See, e.g.*, *Team Worldwide*, 287 F. Supp. 3d at 658–60 (rejecting on the ground that intervenors may not question venue arguments about both improper venue and transfer for the convenience of the parties and interests of justice); *Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*, 117 F. Supp. 2d 515, 517–18 & n.1 (E.D. Va. 2000) (denying intervenor motion to transfer venue on convenience grounds and finding "no basis for making such a distinction" between transfers for improper venue versus convenience of the parties and interests of justice) (citing *Commonwealth Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D. Ill. 1976)).

The Court should deny Intervenors' motion on this basis alone.

## II. The 2025 Rule Establishes New Provisions on a Distinct Record and is Not the "Same Order" as the 2024 Rule.

This Court must also reject Intervenors' motion because these cases challenging the 2025 Rule are *not* "instituted with respect to the same order" as the Eighth Circuit cases challenging the 2024 Rule, making transfer under 28 U.S.C. § 2112(a)(5) inappropriate. The 2025 Rule introduces new substantive provisions and amends earlier ELG regulations in addition to amending some of the 2024 Rule's compliance deadlines. It was the product of a distinct notice-and-comment

9

rulemaking process from the 2024 Rule, and it was based on a newly created administrative record that addresses different issues, focusing on EPA's claim that there is an "energy crisis" justifying changes to ELG regulations. The "same order" requirement in Section 2112(a)(5) does not apply to "closely related but nevertheless distinct agency orders." *State of N.C. Envtl. Pol'y Inst. v. EPA*, 881 F.2d 1250, 1256 (4th Cir. 1989) (single-judge order) (citing *Midwest Video Corp. v. United States*, 362 F.2d 259, 260 (8th Cir. 1966)). Transfer of these consolidated cases to the Eighth Circuit would also be inconsistent with the statute's purpose of having venue selected by random lottery rather than steered by parties toward a preferred forum.

### A. The 2025 Rule Creates New Regulatory Provisions That Go Beyond the Scope of the 2024 Rule.

Intervenors read the 2025 Rule selectively, emphasizing that it amends 2024 Rule compliance deadlines while ignoring that it also creates new regulatory provisions and amends prior ELG regulations not tied to the 2024 Rule. In particular, the 2025 Rule makes two new sets of regulatory changes.

First, EPA created new provisions that allow plants to request site-specific "alternative applicability dates" to indefinitely extend ELG compliance deadlines under either the 2020 or the 2024 Rules. *See* 90 Fed. Reg. at 61347–49 (describing rationale); *id.* at 61353–55 (amending language in 40 C.F.R. §§ 423.18(d) & 423.19(q) allowing a plant to request an alternative applicability date and

10

establishing reporting and recordkeeping requirements). This is a significant departure from the Clean Water Act's mandate that EPA establish ELGs as uniform national standards;[2] these new provisions would allow an undefined number of facilities to make site-specific requests to continue operating indefinitely under earlier, less protective regulations.

Second, EPA established new "tiered" pretreatment standards that would allow indirect dischargers[3] to avoid three-year compliance deadlines if they seek approval to begin discharging pollutants directly to waterways. *See id.* at 61346–47 (describing rationale); *id.* at 61353 (amending language in 40 C.F.R. § 423.16 to allow for certification to avoid three-year compliance deadline). EPA first adopted a mandatory three-year compliance approach for pretreatment standards in the 2015 Rule, *see* 80 Fed. Reg. at 67859–61, and the 2025 Rule changes EPA's longstanding position that such compliance is required.

Both of these provisions were newly created by EPA in the 2025 Rule and amend earlier ELG regulations, not just the 2024 Rule's requirements. The breadth

---

[2] *See, e.g.*, 33 U.S.C. § 1311(b); *Nat. Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 709–10 (D.C. Cir. 1974).

[3] Indirect dischargers do not discharge directly to waterways but instead send their wastewater to municipal treatment plants, known as Publicly Owned Treatment Works. *See* 33 U.S.C. § 1317(b)–(c) (requiring establishment of pretreatment standards for indirect dischargers).

11

of these changes makes clear that the 2025 Rule is not the "same order" as the 2024 Rule under 28 U.S.C. § 2112(a).

> **B.**      **The 2025 Rule Has a Distinct Administrative Record from the 2024 Rule.**

EPA's administrative record index for the 2025 Rule (*see* ECF Nos. 44.1, 44.2, & 44.3) further demonstrates that it is the product of a distinct rulemaking. EPA published a notice of proposed rulemaking for the 2025 Rule on October 2, 2025. 90 Fed. Reg. 47693. At that time, EPA added 64 documents to the administrative record. *See* ECF No. 44.2 at 1266–70 (Entries 20465–528, labeled "2025 Proposal"). After EPA received 5,976 public comments on the proposed 2025 Rule[4] and held two public hearings,[5] EPA published the final 2025 Rule on December 31, 2025. 90 Fed. Reg. 61328. In addition to the public comments, EPA added 123 documents to the 2025 Rule's administrative record in finalizing the rule. *See* ECF No. 44.2 at 1556–65 (Entries 26505–627, labeled "2025 Final").

EPA promulgated the 2025 Rule based on this new administrative record, which was not before EPA when it promulgated the 2024 Rule and not part of the Eighth Circuit litigation challenging the 2024 Rule. In promulgating the 2025 Rule, EPA emphasized that this new record contains "new information and data [that it

---

[4] *See* ECF No. 44.2 at 1271–555 (Entries 20529–26504, labeled "2025 Final").
[5] EPA, *Deadline Extensions Rule Public Webinars*, https://www.epa.gov/eg/steam-electric-power-generating-effluent-guidelines-deadline-extensions-rule#webinars (last visited Mar. 23, 2026).

claims] demonstrat[es] the existence of an energy crisis" that it had not previously considered. 90 Fed. Reg. at 61335. EPA's rationale for the 2025 Rule relies primarily on EPA's contentions, drawing from this new record, that increased electricity demand (including from new data centers), concerns about energy reliability, and supply chain risks justify the 2025 Rule's regulatory changes. *Id.* at 61335–39.

Although EPA's administrative record index also includes historical documents from prior to 2025, only a small percentage of those relate to the 2024 Rule. *Compare* ECF No. 44.2 at 1115–266 (Entries 17892–20464, 2023 proposal and 2024 Rule) *with id.* at 5–1115 (Entries 1–17891, rulemakings between 2013 and 2020). The vast majority of the historical documents in the index are from rulemakings that led to final ELG rules in 2015 and 2020, litigation over which was consolidated in the Fifth and Fourth Circuits, respectively.[6] Each of these distinct rulemakings is labeled in the "Docket" column of the index. The record itself thus contradicts Intervenors' contention that these cases challenging the 2025 Rule bear a unique relationship to the 2024 record under review in the Eighth Circuit. *See* ECF No. 41.1 at 17 (stating incorrectly that the 2025 Rule is undoubtedly "based on the same administrative record as the 2024 Rule, expanded only modestly"). Moreover, while Intervenors emphasize that EPA has retained the

---

[6] *See supra* at 4–6.

same docket number, *id.*, this has been true for all ELG rulemakings dating back to EPA's 2013 proposed rule (*see* ECF No. 44.2), and it does not bear on whether the 2025 Rule is the "same order" as prior rules. The 2025 Rule's record, and its substance, are distinct.

**C.     Transfer of this Case is Not Appropriate under Section 2112 and Would Undermine the Statute's Purpose.**

In light of the distinct administrative record and regulatory scope of the 2025 Rule, transfer to the Eighth Circuit under 28 U.S.C. § 2112(a)(5) would be improper. EPA has acknowledged venue was established here under the Panel's consolidation order by filing the administrative record index in this Court. *See* 28 U.S.C. § 2112(a)(5) (establishing venue in "the court in which the record is so filed"). In asking this Court to hold instead that the 2025 Rule is the "same order" as the 2024 Rule, Intervenors would turn Section 2112 on its head. Section 2112 prevents the filing of the same record for review in different courts to prevent "fragmentary review by different courts" of the same agency action. *Am. Civ. Liberties Union v. Fed. Commc'ns Comm'n*, 486 F.2d 411, 414 (D.C. Cir. 1973) [hereinafter *ACLU*]. But granting transfer here would instead direct the filing of two different records for review, for two distinct agency actions, to the same court.

Section 2112 is not intended to create, and the text does not support, a specialized-review tribunal for different agency actions on a given topic issued years apart. *See Pub. Serv. Comm'n for State of N.Y. v. Fed. Power Comm'n*, 472

14

F.2d 1270, 1272 (D.C. Cir. 1972) (no "specialization of tribunals" provided for under Section 2112). Congress also declined to require cases challenging Clean Water Act rules to be concentrated in a single forum. *See* 33 U.S.C. § 1369(b)(1) (directing legal challenges to national rules to be filed in circuit where petitioners reside or transact business). Following this scheme, in the last 11 years, cases challenging different final ELG rules have been consolidated in the Fifth, Fourth, and Eighth Circuits.[7] There is no more reason to transfer these cases to the Eighth Circuit than there was to transfer the 2024 cases from the Eighth to the Fourth Circuit, or to transfer the 2020 cases from the Fourth to the Fifth Circuit.

Although Intervenors note that the D.C. Circuit did transfer cases challenging the 2017 ELG Postponement Rule to the Fifth Circuit, *see* ECF No. 41.1 at 15, that order does not require a similar transfer in this case. The D.C. Circuit found that the 2017 ELG Postponement Rule was part of an agency proceeding that was interrelated with the 2015 ELG rulemaking,[8] but it made this finding based on EPA's position that the two rules were part of the same agency proceeding,[9] a position that EPA has not taken here. Further, the only regulatory

---

[7] *See supra* at 4–6.

[8] Order, *Clean Water Action v. Pruitt*, Case No. 17-1216, ECF Doc. 1716063 (D.C. Cir. Feb. 1, 2018).

[9] EPA Mot. to Transfer, *Clean Water Action v. Pruitt*, Case No. 17-1216, ECF Doc. 1704178 (D.C. Cir. Nov. 13, 2017).

changes made in the 2017 rule were to amend certain 2015 Rule compliance deadlines; the 2017 rule notably did not add any new provisions to the 2015 Rule. *See* 82 Fed. Reg. at 43500 (amending 40 C.F.R. §§ 423.11, 423.13, & 423.16 solely to change the beginning compliance date from November 1, 2018 to November 1, 2020). By contrast, as discussed above, the 2025 Rule creates broader regulatory changes and has a distinct administrative record. The D.C. Circuit's transfer order on the 2017 ELG Postponement Rule does not weigh in favor of transferring this distinct rule.

Nor should this Court be persuaded that any of Intervenors' other authorities require a transfer. *BASF Wyandotte Corp. v. Costle* found that for Section 2112 purposes a final rule was the "same order" as an interim final rule that EPA had issued to satisfy a court order while it finished the final rulemaking. 582 F.2d 108, 109–12 (1st Cir. 1978). Similarly, in *ACLU*, two orders from the same formal agency adjudication were considered "the same" under Section 2112. 486 F.2d at 413–15. In both cases, it was the agency issuing the orders that took the position that they should be considered "the same" because they would be reviewed based on the same record. *BASF Wyandotte Corp.*, 582 F.2d at 112; *ACLU*, 486 F.2d at 413–15.

By contrast, courts have declined to find two orders "the same" where, as here, "the questions presented and the administrative actions challenged are

16

obviously distinct." *State of N.C. Envtl. Pol'y Inst.*, 881 F.2d at 1256; *see also Midwest Video Corp.*, 362 F.2d at 260–61 (order not "the same" where it raised separate issues and regulated additional products). Under Section 2112, each time an agency issues a new distinct rule, there is to be a new lottery to determine venue. The 10-day lottery deadline indicates that Congress understood that parties would be challenging orders issued contemporaneously, not distinct agency orders from separate processes spread across years.

Congress added a random selection process to Section 2112 to address issues of parties trying to game the system to guarantee a desired venue. *See* S. Rep. No. 100-263, at 2–3 (1987), *as reprinted in* 1987 U.S.C.C.A.N. 3198, 3198–200 (discussing agencies filing the record in their preferred court and parties "racing to the [] courthouse" to be the first-filed petition). By limiting this process to petitions filed within 10 days challenging the same order, the statute plainly does *not* allow for parties to steer venue toward a preferred forum by linking new cases to those challenging prior agency orders—even those that address similar subject matter. Intervenors' motion must be denied as an effort to introduce the kind of gamesmanship that Section 2112 was designed to prevent.

## III. The Convenience of the Parties and the Interests of Justice Do Not Weigh In Favor of Transfer to the Eighth Circuit.

Intervenors alternatively argue that this Court should transfer these consolidated cases to the Eighth Circuit in the interest of justice and judicial

economy because it would "avoid the possibility of having different courts rule on the same or similar issues in challenges to interrelated agency actions pending at the same time." ECF No. 41.1 at 20. Intervenors also claim that convenience to the parties favors transfer because several of the Petitioners are involved in the Eighth Circuit litigation and the administrative records in both actions will "substantially overlap." *Id.* at 21.

Intervenors have failed to show that the interests of justice and judicial economy or convenience to the parties warrant transfer. In addition, "[t]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum." *Murray v. Brit. Broad. Corp.*, 81 F.3d 287, 290 (2d Cir. 1996) (citations omitted); *see also DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002) ("the plaintiff's choice of forum should rarely be disturbed.") (quotations and citation omitted). This Court has recognized that, "when a plaintiff sues in his home forum, that choice is generally entitled to great deference." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003) (citation omitted). The majority of Petitioners here—Waterkeeper Alliance, the Natural Resources Defense Council, Clean Water Action, Diné Citizens Against Ruining Our Environment, Kentucky Resources Council, Environmental Integrity Project, PennEnvironment, Inc., and Prairie Rivers Network—chose to file in this Circuit, and the two lead petitioners are headquartered here, making it their home forum.

18

Intervenors claim that "Petitioners have signaled they will raise arguments related to those presented in the Eighth Circuit." ECF No. 41.1 at 20. But as discussed above, the 2025 Rule does much more than simply amend the "deadlines governing the 2024 Rule." *Id.* The 2025 Rule makes two sets of regulatory changes that go beyond the scope of the 2024 Rule and amend earlier ELG regulations, not just the 2024 Rule's requirements. Moreover, there have been challenges in several different federal courts to prior ELG rules over the past decade—including cases still pending in the Fifth, Fourth, and Eighth Circuits—all of which involved "questions concerning the applicable BAT standard." *Id.* Intervenors have merely described the issues at such a broad level of generality that they would apply to any and all of these prior ELG cases, because all of them naturally involve the BAT standard that the Clean Water Act requires EPA to implement in setting ELGs. 33 U.S.C. § 1311(b)(2)(A).

The issues in these cases before this Court challenging the 2025 Rule are not the same as those in the Eighth Circuit 2024 Rule litigation. Here, the issues include whether EPA has the authority under the Clean Water Act to impose the 2025 Rule's new provisions, and to extend compliance deadlines, based on EPA's newfound claim that there is an "energy crisis" justifying such changes. *See supra* Section II.B. These issues are fully distinct from the merits of whether EPA selected the proper technology-based effluent limitations in 2024.

The interest of justice warrants denying Intervenors' motion. These cases were consolidated in this Court based on the Panel's random selection process. 28 U.S.C. § 2112(a)(3). EPA has not objected to venue in this Court, does not join Intervenors' motion to transfer (*see* ECF No. 41.1), and has filed the 2025 Rule's administrative record index in this case. ECF Nos. 44.1, 44.2, 44.3. Pursuant to Local Rule 31.2, Petitioners have requested that May 22, 2026 be set as the deadline for their brief, ECF No. 48.1, and seek timely resolution of these cases.

Transferring these cases to the Eighth Circuit would likely delay their resolution significantly. The Eighth Circuit proceedings have been held in abeyance for over a year pending anticipated completion of further EPA rulemaking. Order, *Sw. Elec. Power. Co. v. EPA*, Case No. 24-2123, ECF Doc. 5609611 (8th Cir. Feb. 19, 2026). It is unclear when, if ever, that abeyance would be lifted. Attaching the cases before this Court to cases brought by different petitioners raising different challenges to a distinct rule, which will continue to be held in abeyance for at least several more months, does not favor the interest of justice or convenience to the parties.

"Sound judicial administration" also does not weigh in favor of transferring the consolidated cases to the Eight Circuit. This is not a case where one court has "great[er] familiarity with regulatory law" or "the statute in issue." *Clark & Reid Co. v. United States*, 804 F.2d 3, 7 (1st Cir. 1986); *see also Fed. Lab. Rels. Auth. v.*

*Soc. Sec. Admin.*, 846 F.2d 1475, 1479 (D.C. Cir. 1988) (holding transfer was not in the interest of sound judicial administration where transferee court did not have "a particular expertise in deciding issues of this sort"). As discussed above, Congress designed both Section 2112 and the Clean Water Act judicial review provisions to intentionally avoid creating a specialized tribunal for review of ELG or similar cases. *See supra* at 14–15. This Court is just as well-equipped to decide the questions at issue here as the Fifth, Fourth, and Eighth Circuits are to decide the ELG cases that are before them.

Finally, convenience to the parties does not favor transferring the consolidated cases to the Eighth Circuit. First, Intervenors have given no reason why litigating in this Court, which they chose to enter, would be in any way burdensome, let alone shown that such burden would outweigh the strong presumption in favor of Petitioners' chosen forum. Although neither party has provided its headquarters, America's Power is "a national trade association whose members own and operate coal-fired power plants," ECF No. 26.1, and UWAG is "a voluntary, non-profit, unincorporated group of 129 individual energy companies and two national trade associations of energy companies." ECF No. 23.2. As intervening parties, these organizations have not even attempted to suggest there is any impediment to them or their counsel being able to fully litigate this case here.

21

Moreover, this is an administrative record review case, so there are no witnesses likely to be involved and no concerns about the location of evidence.

Intervenors try to use the fact that some Petitioners in this case are also involved in the litigation over the 2024 Rule. ECF No. 41.1 at 21. But some Petitioners are headquartered in this jurisdiction, further weighing in favor of their choice of their home forum. And parties' involvement in the 2024 Rule proceeding is meaningless because many of the parties in this Court were "integrally involved," *id.* at 21, with the administrative and legal proceedings concerning the 2015 and 2020 Rules as well. Yet that did not compel the Eighth Circuit to transfer the 2024 cases to the Fourth Circuit, or the Fourth Circuit to transfer the 2020 cases to the Fifth Circuit. In addition, as discussed in Section II.B, the relevant portion of the administrative record in this action will *not* substantially overlap with the record in the Eighth Circuit litigation, and the questions presented are totally different.

Thus, the interests of justice and judicial economy and the convenience of the parties do not weigh in favor of transferring the consolidated cases to the Eighth Circuit. If transfer is appropriate anywhere, it should be to the Fourth Circuit, which is hearing cases brought by many of the same Petitioners challenging the 2020 Rule. *See Appalachian Voices v. EPA*, Case No. 20-2187 (4th Cir. filed Nov. 2, 2020). The practical effect of the 2025 Rule's deadline

22

extensions is that power plants will be permitted to operate for longer under the 2020 ELG regulations. *See, e.g.*, 40 C.F.R. § 423.13(g)(1)–(3), (k)(1)–(3) (2020 BAT standards). Transfer is not appropriate at all under Section 2112, but if this Court were to consider transfer, the Fourth Circuit is a more appropriate venue than the Eighth Circuit.

## CONCLUSION

For the reasons set forth above, Petitioners in Case Nos. 26-128, 26-318, and 26-388 respectfully urge the Court to deny the motion to transfer.

Dated: March 30, 2026

/s/ Thomas Cmar_____
Thomas Cmar
Earthjustice
6608 Wooster Pike
Cincinnati, OH 45227
(312) 257-9338
tcmar@earthjustice.org

*Counsel for Petitioners Waterkeeper Alliance, Inc., Natural Resources Defense Council, Clean Water Action, Diné Citizens Against Ruining Our Environment, Kentucky Resources Council, and Sierra Club*

Joshua Smith
Sierra Club Environmental Law Program
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5560
joshua.smith@sierraclub.org

*Counsel for Petitioner Sierra Club*

Abel Russ
Environmental Integrity Project
888 17th St. NW, Suite 810
Washington, DC 20006
(202) 296-8800
aruss@environmentalintegrity.org

*Counsel for Petitioners Environmental
Integrity Project, PennEnvironment, Inc.,
and Prairie Rivers Network*

Nicholas Torrey
Southern Environmental Law Center
601 W. Rosemary Street, Suite 220
Chapel Hill, NC 27516
(919) 967-1450
ntorrey@selcnc.org

*Counsel for Petitioners Appalachian Voices
and South Carolina Coastal Conservation
League*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this response complies with the requirements of Fed. R. App. P. 27(d)(2)(A) because it contains 5,199 words according to the count of Microsoft Word, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), and therefore is within the word limit of 5,200 words.

I further certify that this motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this motion was prepared in Microsoft Word with the proportionally-spaced typeface of Times New Roman 14-point.

Dated: March 30, 2026

/s/ Thomas Cmar_____
Thomas Cmar

**CERTIFICATE OF SERVICE**

I certify that on March 30, 2026, I electronically filed the foregoing Response to Intervenors' Motion to Transfer via the Court's ACMS system and thereby caused the foregoing to be served on all counsel of record who have appeared in this case using that system.

Dated: March 30, 2026

/s/ Thomas Cmar_____
Thomas Cmar